Nice, clear arguments by both sides. Thank you. Mr. Weinblatt. Go ahead. Good morning, Your Honors. Rich Weinblatt of St. Louis & Weinblatt on behalf of Inventor Holdings.  The district court had, on two previous occasions, denied 101 motions on the same patented issue here after considering Mayo and Bilski. Did you make any evaluation post-Alice as to the remaining merits of your 101 claims? And if so, what evidence do you have of that evaluation? We did look at Alice, saw that Alice reaffirmed Mayo and Bilski, looked at the arguments that were raised in the previous briefs where the defendants heavily relied on Mayo and Bilski. We looked at the claims, our arguments, saw that the district court denied the previous motions to dismiss, and if you look at the proposed orders that the previous defendants filed, the proposed order said, having considered defendants' motions to dismiss, the motion is granted. Now, when the district court denied the motions, he didn't take those proposed orders and just cross off granted and make it denied. The district court wrote, having considered the motions, the pleadings, and the relevant law, he then denied the motions. So that told us that our arguments had merit, that the two-part test of Mayo and also the consideration of Bilski were overcome. In other words, the patent survived 101 because the court denied those motions after considering. Do you agree that a denial of a motion to dismiss is on a different footing than a denial of, say, a motion for summary judgment? It is on a different footing when it comes time for the evidentiary record. But when it comes time for a party acting in accordance with— I mean, I guess what I'm trying to say is I don't really see the denial of a motion to dismiss as an opinion by a court proclaiming that the claims are valid and that they're patent eligible. They're just saying, in fact, I see a court as saying, well, it's not so clearly painfully obvious that one side deserves to have this case dismissed. And so I think it should go forward at least a little bit longer. All right, so let's take that presumption and assume that's what the district court thought. Bed Bath & Beyond filed its motion under Rule 12c, which is the equivalent of Rule 12b-6. Once again, the district court had absolutely no evidence in front of it. So looking at the documents themselves, meaning the pleadings, they're the same as what was filed in the previous cases. There was no evidentiary record. There was no expert reports that could be submitted because that's outside of the pleadings. There was no claim construction order. The district court did not consider any of that. So if Your Honor ---- Is all of this an answer to my question, which is what evidence do you have of this evaluation post Alice? It is. Because if it is, I'm not real impressed. If you look, and, Judge Wallach, you were at the previous oral argument. One of the arguments that was made was that the invention allowed the interoperability between a point-of-sale system and a back-end system. And at that point in time, in 1997, those two computer systems, they could not communicate with each other. Now, the court ruled 36th the district court's opinion, meaning that the overall opinion was correct. That doesn't mean that the court agreed or disagreed with the analysis done by the district court. That interoperability argument and the argument that was made on behalf of Mentor Holdings about how the code allowed the two types of machines to communicate and improve upon the prior art, later in time was used by the Federal Circuit to find some inventions have been eligible under 101. So looking at all of the cases that have been cited and the arguments that were made, Mentor Holdings believed its patents could survive a 101 challenge. The fact that it did not survive a 101 challenge does not mean that that's sanctionable conduct to proceed with a case. There wasn't an award of attorney fees in this case for sanctionable conduct. It's just a finding that's reviewed for an abuse of discretion that this case stands out out of the ordinary, that it's exceptional, right? I mean, isn't that what the Supreme Court said? The district court is supposed to look and see whether, in its view, the case is exceptional or not, not whether the party's conduct is sanctionable. I guess another way of putting it is I don't believe either the Supreme Court or this court has ever equated a 285 attorney fee award with the term sanction. Have we? It has not determined. It has not, Your Honor, no, it has not. The way that we're looking at this case is... So that's why, I mean, maybe this is just a little bit of wordsmithing, but there's a little bit of sensitivity maybe on this side of the bench of referring to something under a 285 award as a sanction because sanction connotes something a little extra and a little different. In the briefs we're using, sanction is fee award under 285. Right. So could you just not use the word sanction and find a different word? Sure, Your Honor. Okay. All right, we'll do it. So here there was no bad act, there was no discovery of abuse, there's no litigation misconduct, nothing outside the norm of what is expected in typical patent litigation. Right. Go ahead. Sorry. Okay. As I understand what happened in the grant of the attorney fee award here is that the judge concluded that there's an alternate reason for the award, which was that your claim was woefully weak after Alice, that Alice was a critical moment in understanding the strength of your patent. Prior to the Alice opinion in June 2014, for about a year we were living in a world where this court and bank, in a very badly fractured divided opinion, couldn't come to a majority decision on whether the CLS Bank patent claims were in fact patent eligible. Right. So the law was at a minimum in disarray for a year. And that was the period of time where Judge Sleet here denied those initial set of motions to dismiss. Then Alice comes around in June 2014, which greatly clarifies the law when it comes to computer implemented inventions, specifically conducting business transactions on a network. Right. That was what the Alice invention was about. The Supreme Court, you know, obviously there's still difficult line drawing on the margins, but at least in a core area, a core zone of purported inventions, it was very clear that they are now outside of the patent system. And so as I see what Judge Sleet did was now with that great clarity that the Federal Circuit, unfortunately, you know, we struggled. We couldn't figure it out before that. Now with that great clarity, that was the time for you to make a reassessment of the strength of your claims. Your Honor, Alice specifically says that it was following Mayo. The substantive test for 101 did not change in Alice. Right, but we didn't know the true vitality of the Mayo framework. And in this context, computer implemented business methods until the Supreme Court's opinion in Alice. Okay, now we've got that application in the context, which is the very context of your invention. So that's why I guess what I'm concerned about is I understand Judge Sleet's point of view, and now I'm trying to just assume for the moment that I agree with Judge Sleet's point of view. Now I need you to move me off of that. Where did Judge Sleet get it wrong? Judge Sleet got it wrong in awarding fees against inventor holdings based on Judge Sleet's changing his mind after he further considered a motion. No, no, no. You're saying based on the law being clarified. Is that what you mean? I'm saying that if you look at the history of it, Alice reaffirmed Mayo and Belsky. Judge Sleet acknowledged that in his opinion. Yet Judge Sleet also said, and it's on appendix page APPX007, the court finds that the 582 patent was dubious even before the Alice decision. That's an opinion Judge Sleet could have made when he looked at the previous motions to dismiss. He was dealing with a motion to dismiss. The standard is, is there any possibility, as opposed to even a summary judgment standard where there's a genuine issue of material fact. Your Honor, he was ruling on a Rule 12c motion, which is similar to the same standard that's used for a motion to dismiss. It was not a motion for summary judgment here. That's what I'm saying. So he bent over backwards for you. It's hard to say that Judge Sleet bent over backwards when if, as Judge Chen said, he was allowing the case to proceed, to have an evidentiary record, there was no evidentiary record. Listen, as a trial judge, as a trial judge, I used to, on motions to dismiss, rather than granting them, allow counsel multiple opportunities to amend their complaint in order to get by it if they possibly could. I felt that was my obligation. Your Honor, there could have been an oral argument for 101, but Judge Sleet didn't have one. Counsel, he also says that you persuasively argue that your argument, the validity, it had some merit, but at the beginning of the litigation. And then he goes on and talks about Alice. So I don't see error in this statement about it being dubious. Do you have something else? It's unclear to Inventor Holdings how arguments that could be successful on one day were unsuccessful the next, when the Supreme Court's Alice decision affirmed prior precedent. The Supreme Court did not say, here's a new test, here's what's new and how to apply it. The Supreme Court said when you add a computer to the claim, something that previously, that is not going to save the claim. That is not going to make it survive the step one and step two. No, the Supreme Court said there has to be something more. And then when you look at the Federal Circuit's, this Court's opinions, and Fish. As I understand it, Mayo, that was about optimizing some therapeutic regime. That was a life science claim. Alice was a computer-implemented business method. And your invention is not about a medical diagnostic or optimizing a therapeutic. Your invention is a computer-implemented business method on a network. Your Honor, in Alice on, let's see what page it is. In Alice, in subheading one, beginning on 134 Supreme Court 2355. Just so you know, I'm pointing out you're into your rebuttal. The Supreme Court relies on Benson, Deere, and Fluke, and it says, quote, these cases demonstrate that the mere recitation of a generic computer cannot transform a patent-eligible abstract idea into a patent-eligible invention, end quote. So that means Alice didn't say anything new. It's just reaffirming prior precedent. And with that, I'd like to save the remaining time for rebuttal. Counsel? May it please the Court? A district court has considerable discretion when determining the exceptionality of a case. Here, Judge Sleet did not abuse that discretion, and Inventor Holdings has not and cannot point to any basis for this Court to hold otherwise for three reasons. First, Judge Sleet's finding was not based on any clearly erroneous finding of fact. Second, Judge Sleet's finding was not based on any erroneous interpretation of the law. And third, Judge Sleet's finding was not arbitrary. As to the first point, Judge Sleet's finding was not based on any clearly erroneous finding of fact. There is no discussion in Inventor Holdings' briefing pointing to any fact that he got wrong or overlooked. It's just they disagreed with his decision. And that is the point at which the abuse of discretion standard affords the most deference to a court, is in the decision that he makes. As this Court held in SFA Systems v. Newegg, it's not going to look necessarily at the correctness of the decision, but whether it was based on the correct set of facts and the correct law. And that's what we have here. So if we're looking at the facts, the facts are very simple. Can you just respond to what your opposing counsel was saying for the past 12 minutes? Let's focus on that part. Absolutely, Your Honor. So this question, this idea that Judge Sleet changed his mind and simply decided, well, it was eligible in 2013 and it's ineligible in 2015. That's not what happened. Clearly we had Alice in between, but I think Judge Cheney made a good point that simply denying a motion for 12b-6 is not an affirmance of the eligibility of this patent. It's not saying this patent is eligible under 101. It's that the defendants at that time and under that law had not shown that there was no reasonable set of facts on which Inventor Holdings could proceed with its case. When Alice came out, it clarified the law and established that that two-part test for Mayo could be applied in computer-implemented claims. So Bilski doesn't mention a computer at all. Mayo doesn't mention a computer at all. So the question was, if we have a computer in our claims, is that going to be sufficient, especially under the second step of the Mayo test, to provide an inventive concept? And the Supreme Court said, no, that's not sufficient. Just having a general-purpose computer, taking an abstract idea and applying it with a computer, isn't sufficient. So under that standard, after that case came out, Judge Sleet was presented with our motion on the pleadings to establish that the claims were ineligible under 101 because all they did was address a business challenge and apply it on a computer. And Inventor Holdings admits this. If you take a look at page 206 of the record, in response to our motion for judgment on the pleadings, Inventor Holdings says, the claims are directed to a solution addressing a business challenge. So that's step one right there. We have the abstract idea. Now, is there an inventive concept? The only thing that Inventor Holdings has ever pointed to is saying, oh, the computer is specially programmed. Well, actually, if you take a look at column 5, from lines 46 to 52 of the patent, it says that that point-of-sale computer is a conventional computer. The remote seller is a conventional computer system. The buyer system is a conventional home computer. So every instance of something they've pointed to to claim that there is an inventive concept is just the conventional use of general computer components. So there isn't anything... We already ruled on that, right, with the Rule 36? Absolutely, Your Honor, and we can't necessarily say that there were certain things in the opinion of Judge Sleet on 101 that this Court agreed with, but it clearly didn't feel like anything else needed to be added by affirming it under Rule 36. So Judge Sleet, at the time that he made his decision, in August of 2015, had a full record before him, and what did he see? He saw that when the 12b-6... Because he was also the judge, of course, who denied the 12b-6 motions. At that time, Inventor Holdings said, Your Honor, you can't grant this motion for three reasons. One, we need claim construction. Two, we need a factual record. Three, these claims survive because they're concrete and tangible, because they passed the machine or transformation test. Then Alice came out, and Inventor Holdings made its argument to support eligibility of its claims three times after that. All three times, it made the exact same three arguments. It had to re-evaluate its case, and it never did. Although it cited Alice, it rejected its applicability to its claims, which was the objectively unreasonable portion of its defense. Are you asking for fees for this appeal, too? Your Honor, we're asking this court to remand to Judge Sleet to determine, in his discretion, whether the fees for this appeal would be appropriate, because it's certainly a question under 285 for the district court to answer, and so we think he should have that opportunity, because... So you're saying, when it comes to the potential for a 285 fee award for a totally meritless appeal, hypothetically, that's not something that the Federal Circuit can ever rule on in the first instance? No. With respect to understanding the strength, the objective strength of an appeal? No, Your Honor, that's not what I'm saying at all. This court could make that determination, but the determination is reserved in the first instance for Judge Sleet as the trial court. That's what we have from the Supreme Court's decision in Highmark, and what's important to... Do you also think that this court can decide whether a particular appeal is a frivolous appeal and then award fees under that standard? Yes, Your Honor. So that's separate from the 285 determination? Yes, Your Honor, and that's one of the points that Inventor Holdings makes, is that we... Can we also award the fees, but remand to the district court to determine the amount? Absolutely, Your Honor. But I thought you said it's under Highmark, it's under the district court is the one in the first instance that has to make the determination. Because in that situation, we're talking about the 285 determination. If this court were to find that this appeal, for example, were frivolous, that would be a different finding. It would be based on the 285 finding of Judge Sleet. You would have the record of Judge Sleet finding that the case was meritless after Alice, and they appealed. If, hypothetically, this court were ever to deem an appeal frivolous and then award fees for that frivolous appeal, would a prevailing party on that be able to go back and get a double dip and seek 285 fees for the appeal? I think it would depend on what the basis was for that party to go back and say that the case was then exceptional. Was it exceptional because of the frivolous appeal, which would be under the Federal Circuit's rules, or was it exceptional because, as in this case, the claims were meritless after Supreme Court precedent was handed down, and then they continued to make the same arguments time after time and were told in multiple occasions that that argument had to be changed and never did. And that's clear from, for example, the oral argument the last time we were before you, when opposing counsel brought up the concrete and tangible nature of the claims, and Judge Hughes pointed out that that was against hordes of precedent on this issue. If we were to affirm, but not say anything more, and then you went down and asked for 285 fees for this appeal, would you also simultaneously be asking for fees for your pursuit of the fees of the appeal? Or if you win that, then would you be asking for fees for prevailing on that victory of getting the fees on the appeal? Certainly, Your Honor. I think we would. I'm just trying to figure out how this works. So under this court's precedent in Theracense, the district court has the ability to award fees for the trial and then for any subsequent appeals. And it's in plural. So any appeals that come afterward, he can award fees for. And certainly, if we were to do that, we would put all of our fees before Judge Sleet and allow him, in his discretion, to determine which of those fees are based from the exceptional nature of the case and which ones would be appropriate to award to ensure the considerations he took in mind when he made his decision, which was specifically to deter wasteful litigation. So he could make the decision of, what do I have to award in this case to signal to litigants in the future that this is not a type of case you should bring? And if you were to bring it and Supreme Court precedent comes down, you have to reevaluate your claims and understanding that if your claims are ineligible, you should dismiss your case. So in this situation, we have Judge Sleet addressing from the outset their 12B6 motions with the other defendants and our 12C motion. He had the entire record before him. He based his decision on the totality of the circumstances and in better holdings has not been able and cannot point to any clearly erroneous finding of fact or erroneous interpretation of the law. Nor was his decision arbitrary. He took a measured approach. He didn't give us all the fees that we asked for. He said only from Alice, and you won't get your expert fees, just the attorney's fees, the appropriate award to deter wasteful litigation in the future. And it's for these reasons, Your Honors, unless you have any other questions, that we ask this court to affirm Judge Sleet's finding and uphold the exceptionality of this case. Thank you, counsel. Go ahead, Mr. Weinman. Your Honors, although Alice did not change, Mayor Orbelski, post-Alice, case law has been in flux. Bed, Bath, and Beyond analyzed this case to the case of Edeka and Garfoum in their brief. Now, in Garfoum.com, the district court vacated its sanction award, finding that it didn't take into full consideration the changing environment of 101, and that the law has sufficiently evolved so that the plaintiff may have had an arguable or plausible inventive concept under Section 101. In Edeka, the case involved a ---- But Judge Sleet didn't do that. He didn't find that. He found that it was clear that you should have dropped the case at that point. Judge Sleet's decision does not mention ENFSH, and the cases of Bascom, McGrow, and Trading Technologies, all issued after Judge Sleet's May 31, 2016, order, which just shows that the application of Section 101 and the test set forth in Mayo has been in flux. Even in the District of Delaware, in the case of YYZ, for example, the district court held that due to the evolving nature of the Section 101 analysis, granting a 285 motion should not take place. Now, something my colleague has said during his argument was that the district court had a full record in front of it when ruling on a 12C motion. That statement's not true. There was no full record. Expert reports had been done, but they were never in front of Judge Sleet. And had Judge Sleet been able to see the expert reports, Inventor Holdings' technical expert did opine on the validity of the patent in suit, including statements about the prior art and how what Inventor Holdings' patent covered was not routine or conventional. And last, I'd like to reiterate that Judge Sleet, on APPX 0008, in his opinion, said that he applied the Mayo test, the same test that were in front of him in the previous rulings. If your honors have no further questions, we ask that the district court's award be reversed. Thank you. The matter will stand submitted. Thank you, counsel. All rise. The honorable court is adjourned from day to day.